TERENCE T. EVANS, Circuit Judge,
concurring.
Although I agree with the majority that Messrs. Pitts and Alexander abandoned the package, and that in any event United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), compels the denial of their motion to suppress, I would prefer, however, to resolve this case on the same basis as Judge Mihm resolved it in the district court. Like him, I would conclude that the defendants lack the type of legitimate expectation of privacy that society is prepared to recognize as reasonable, and thus their motion to suppress should be denied on that basis.
The problem with resting our decision on an abandonment theory is apparent if the facts are tweaked a bit. Assume that instead of disclaiming the package, as he did, Alexander accepted it and told the inspector “Yes, it’s my package, but that’s not my real name. I just use the name James Reed, Jr. when it suits my purposes.” Had he said that, there would be no abandonment, and if that was the only theory to hang one’s hat on, his motion to suppress would have to be granted. Which seems, indeed, like a fairly odd result. Why should such an obviously guilty defendant, who uses the United States Postal System to further a criminal *460 enterprise, escape his due? And instead of two guys using phony names to send cocaine through the mail, tweak the facts a bit more and think of two terrorists using phony names to mail a package of pipe bombs, or plans to blow up the Brooklyn Bridge, from one to the other. Under an abandonment theory, had the recipient terrorist said the same thing Alexander said in my first example, the evidence in the package would not be admissible during a trial. And that is an even odder, and deadlier, result. For that reason, I submit it would be better in today’s case to ground our decision on a more solid basis and hold that using phony names, while using the postal system of the United States, does not, except in unusual circumstances not present here, give rise to the sort of personal Fourth Amendment privacy concerns that the Fourth Amendment’s exclusionary rule is designed to protect.
Fourth Amendment rights are personal rights which may not be asserted vicariously. Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). As the Court observed, “The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.” Id. at 131 n. 1, 99 S.Ct. 421.
Although both the government and the defendants focus on the question of standing to challenge the search, ever since Rakas the type of analysis that centers on standing to assert Fourth Amendment rights as “distinct from the merits of a defendant’s Fourth Amendment claim” has been abandoned. Id. at 138, 99 S.Ct. 421. In Rakas, the Court held that “the better analysis forthrightly focuses on the extent of a particular defendant’s rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.” Id. at 139, 99 S.Ct. 421. Specifically, this analysis involves an inquiry into “whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.” Id. at 140, 99 S.Ct. 421.
Going on, the law is fairly well established, at least as far back as Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that the Fourth Amendment protects people, not places, and one may assert a valid claim under the amendment only if one enjoys a legitimate expectation of privacy in a searched item, like the package here. Rakas, at 143, 99 S.Ct. 421. Determining whether defendants possess a legitimate expectation of privacy involves a two-part inquiry: (1) did they demonstrate a subjective expectation that the contents of the package would remain free from public intrusion, and (2) are their subjective expectations of privacy “one[s] that society is prepared to recognize as ‘reasonable.’ ” Id. (quoting Katz v. United States at 361, 88 S.Ct. 507).
Our case is just like United States v. DiMaggio, 744 F.Supp. 43 (N.D.N.Y.1990), where a perceptive district judge (Munson) observed that the “expectation of privacy vanishes, however, when the identity of the sender and intended recipient is not indicated ... on the package.” Id. at 46. Neither our sender nor our recipient have announced, because they used phony names, that either claims a privacy interest that our society is prepared to recognize as reasonable. While “James Reed, Sr.” of Sacramento (as the sender) and “James Reed, Jr.” of Moline have a privacy interest, they don’t actually exist. So I think it makes good sense to conclude that even though Pitts and Alexander created them, they cannot successfully hide behind them.
But what about people who have legitimate reasons for using a nom de plume, *461 someone like the late Esther Pauline Led-erer who, for years, dispensed advice as a syndicated columnist? Could she lose her privacy rights were we to take the route to affirmance I suggest? No. Because Esther Lederer is Ann Landers. Just as her twin sister, Pauline Esther Phillips, is fellow advice-to-the-lovelorn dispenser Abigail (“Dear Abby”) Van Burén. They are their alter egos in a way society recognizes as legitimate. No amount of pushing and shoving, however, can turn Pitts and Alexander into the fictitious “Mr. Reeds” in the same way. The denial of the defendants’ motion to suppress, I submit, would be better grounded on the basis I, and Judge Mihm, suggest.